IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN (WATERLOO) DIVISION

| UNITED STATES OF AMERICA, | ) | No. CR 15-2049-LRR |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | |
| ROBERT TURNER, | ) | GOVERNMENT'S SENTENCING |
| | ) | MEMORANDUM AND RESISTANCE |
| Defendant. | ) | TO MOTION FOR VARIANCE |

The government submits the following memorandum to address issues to be decided by the Court at sentencing. The government also resists defendant's motion for a downward variance.

## I. SUMMARY OF THE CASE

    A.    Witnesses: None at this time.

    B.    Exhibit (to be offered under seal):

           1.    Victim impact statement from Blue Pillow series victim, including restitution request

    C.    United States Sentencing Guidelines (USSG) Calculation: The government agrees with the guidelines calculation in the Presentence Investigation Report (PSIR).

## II. RESTITUTION REQUEST

The victim in the Blue Pillow series has requested restitution in her victim impact statement (Government Exhibit 1), but the government does not have sufficient documentation to support this request. Accordingly, the government is not recommending restitution for this victim.

1

## III. THE COURT SHOULD NOT GRANT DEFENDANT A DOWNWARD VARIANCE UNDER 18 U.S.C. § 3553(a)

Defendant argues that he should receive a downward variance based on factors including his disagreement with the child pornography sentencing guidelines; his history and characteristics, including his mental health issues and prior victimization; his lack of a criminal history; and his cooperation in this case. (Defendant's Sentencing Memorandum at 1-6). The factors under 18 U.S.C. § 3553(a) do not support a downward variance in this case.

The "nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), include defendant's use of peer-to-peer file sharing to download child pornography and his use of child pornography since 1997 or 1998. (PSIR ¶¶ 5, 10). Defendant possessed at least 7,000 images and 23 videos of child pornography, including many depictions of prepubescent females. (PSIR ¶ 12). Defendant had child pornography on two computers, a USB flash drive, and a DVD. (PSIR ¶¶ 6-8, 11). This child pornography included depictions of adult males sexually penetrating prepubescent children, bondage, the insertion of objects into children's genitals, urination on children, and bestiality. (PSIR ¶¶ 11-12).

The forensic examiner who examined defendant's electronic items found two images of the mascot Pedobear and stories relating to child sexual abuse, including incest stories involving children. (PSIR ¶ 11). The forensic examiner also found the TrueCrypt encryption software; defendant admitted he used this software and provided law enforcement with his passwords. (PSIR ¶¶ 10-11).

In August 2013, in an interview during the execution of a search warrant at his residence, defendant admitted to his long-term use of child pornography. (PSIR ¶ 10). He also stated he was interested in adult pornography involving S&M, bondage, and rape fantasies. (*Id.*). Law enforcement found a toolbox containing handcuffs, whips, ball gags, a blindfold, children's underwear and socks, and pornographic movies. (PSIR ¶ 9). Defendant stated that he had purchased the children's underwear and socks online and had used them for his own sexual purposes. (PSIR ¶ 10).

Defendant's "history and characteristics," 18 U.S.C. § 3553(a)(1), include his obtaining a bachelor's degree and attending postgraduate classes, a history of employment and underemployment, and a history of physical health issues. (PSIR ¶¶ 45-47, 52, 54). Defendant reported a history of mental health issues, particularly after the execution of the search warrant in August 2013. (PSIR ¶¶ 48-49).

After the execution of the search warrant, defendant also reported he had been victimized as a child. (PSIR ¶ 48). He argues that he tried to bury thoughts of this abuse, and he suggests that he repressed memories of it. (Defendant's Sentencing Memorandum at 4; Defendant's Exhibit B at 3). He claims that he "viewed child pornography as a punishment," that "[a]t one point he believes he saw an image of himself and he continued to look for that," and that he wanted to "relive that abuse by viewing child pornography." (Defendant's Sentencing Memorandum at 4). He also contends that "[h]e gained no pleasure from the images." (*Id.*).

However, defendant possessed many images of child pornography depicting

3

prepubescent females (PSIR ¶ 12); this went well beyond any attempt to find an image of himself, and it is not consistent with his claim that he wanted to relive his abuse. Given all of the circumstances outlined above, including defendant's collection of female child pornography and his use of children's underwear and socks for sexual purposes, his refusal to admit that his child pornography collection involved sexual gratification is concerning. Defendant argues that "[h]e understands why he looked at child pornography . . ." (Defendant's Sentencing Memorandum at 6), but his explanation for his use of child pornography does not support this argument.

Defendant contends that the child pornography guidelines are flawed. (Defendant's Sentencing Memorandum at 2-3). "Assuming that it may disregard the child pornography sentencing guideline on policy grounds, a district court is not required to do so." *United States v. Black*, 670 F.3d 877, 882 (8th Cir. 2012). Here, defendant received a five-level enhancement for possessing over 600 images of child pornography, but he actually possessed at least 8,725 images (with one video considered the equivalent of 75 images). (PSIR ¶ 22). His possession of sadistic and masochistic child pornography is an aggravating factor, and it is reflected in the four-level enhancement under USSG §2G2.2(b)(4). (PSIR ¶ 20). Although defendant used peer-to-peer file sharing to obtain child pornography (PSIR ¶ 10), he did not receive an enhancement for distribution; rather, he received a two-level reduction under USSG §2G2.2(b)(1). (PSIR ¶ 18). Defendant argues that he lacks a criminal history (Defendant's Sentencing Memorandum at 3), but this already is reflected in his criminal history category of I. (PSIR ¶ 34). Further, many of the

4

aggravating factors listed above are not reflected in the specific offense characteristics in USSG §2G2.2.

Based on the aggravating and mitigating factors in this case, a sentence within the advisory guidelines range is appropriate. A guidelines sentence would "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). A guidelines sentence also would "avoid unwarranted sentencing disparities among defendants with similar criminal records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

For the above reasons, the government respectfully requests that the Court deny defendant's motion for a downward variance.

Respectfully submitted,

KEVIN W. TECHAU
United States Attorney

By: s/ Mark Tremmel

MARK TREMMEL
Assistant United States Attorney
111 Seventh Avenue SE, Box 1
Cedar Rapids, Iowa 52401
(319) 363-6333 / (319) 363-1990 (fax)
Mark.Tremmel@usdoj.gov

CERTIFICATE OF SERVICE

I certify that I electronically served a copy of the foregoing document to which this certificate is attached to the parties or attorneys of record, shown below, on May 19, 2016.

UNITED STATES ATTORNEY

BY: s/ Mark Tremmel

COPIES TO: Melanie Keiper

5